U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

NOV 2 6 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LEROY ANTHONY MILES,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. CV06-1079-A c/w CV04-2063-A |
| VERSUS | |
| TIMOTHY WILKINSON, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Leroy Anthony Miles ("Miles") on June 26, 2006. The named defendants are Timothy Wilkinson ("Wilkinson"), warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana, Correctional Corporation of America ("CCA") (operator of the WCC), Virgil Lucas ("Lucas") (security chief at WCC), Pat Thomas ("Thomas") (a registered nurse employed at WCC), Dr. Pacheco (a medical doctor employed at WCC), and Dustin Beaubouef ("Beaubouef") and K. Jordan ("Jordan") (correctional officers employed at WCC). Miles alleges that, while he was confined in the WCC on December 22, 2005, defendants failed to protect him from an attack by other inmates, in which he was stabbed, and then provided inadequate medical care. For relief, Miles asks for monetary damages. Miles is currently confined in the Allen Correctional Center in Kinder, Louisiana.

Miles' case was consolidated with five other cases against defendants employed by CCA to work at WCC.[1] Defendants filed a motion for summary judgment, with a statement of undisputed facts, and documentary exhibits (Doc. Item 28). Miles filed a brief and documentary exhibits in opposition to defendants' motion (Doc. Item 30). Defendants' motion for summary judgment is now before the court for consideration.

<div align="center">Law and Analysis</div>

The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

---

[1] Carruth v. Wilkinson, No. CV04-2063; Anderson v. Wilkinson, No. CV05-932; Johns v. Wilkinson, No. CV05-1016; Hamilton v. Wilkinson, No. CV05-1563; Baker v. Wilkinson, No. CV05-1914.

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. <u>Stewart v. Murphy</u>, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. <u>Herrera v. Millsap</u>, 862 F.2d 1157, 1159 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such

allegations are insufficient, therefore, to defeat a motion for summary judgment. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

<u>C.O. Beaubouef</u>

Miles contends in his complaint that, on December 22, 2005, at about 3 p.m., he was involved in an altercation with two other inmates who stabbed him thirteen times. Miles alleges that Officer Beaubouef stood by and failed to protect Miles from the other inmates and from Officer Jordan, who sprayed him with pepper spray.

Defendant Beaubouef was never served (Doc. Item 21). Accordingly, Miles' complaint against Beaubouef should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m). See <u>McGinnis v. Shalala</u>, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); <u>Systems Signs Supplies v. U.S. Dept. of Justice</u>, 903 F.2d 1011, 1013 (5th Cir. 1990); <u>Kersh v. Derosier</u>, 851 F.2d 1509, 1512 (5th Cir. 1988).

<u>Excessive Force and Officer Jordan</u>

Miles further complains that Officer Jordan sprayed the inmates with mace because they had been fighting. Although Jordan was served with a summons (Doc. Item 17), he was not named as a defendant in this suit (Doc. Item 1), and Miles did not allege in his complaint that Jordan violated his constitutional rights. Instead, Miles only claimed that Beaubouef failed to tell Jordan

4

that Miles had been stabbed and not to spray Miles with mace. However, in his opposition to the motion for summary judgment, Miles claims Jordan used excessive force when he sprayed Miles with mace.

To prevail on an Eighth Amendment excessive force claim, a plaintiff must establish that force was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm, and that he suffered an injury. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

In determining the subjective intent of the officer, the trier of fact must base its determination on relevant subjective factors suggestive of intent. Some of the pertinent factors are the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Bender v. Brumley, 1 F.3d 271, 278 (5th Cir. 1993), quoting Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992). A convict, or a pretrial detainee, need not demonstrate significant injury where the force used was malicious and wanton. The core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Bender, 1 F.3d at 278, n. 6, quoting Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

5

It is well settled that the use of mace and other chemical agents, in appropriate quantities, where necessary to restore prison order and security, does not constitute cruel and unusual punishment, even if the inmate is locked in his prison cell or is in handcuffs. Ort v. White, 813 F.2d 318, 324 (11th Cir. 1987); Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984), cert. den., 470 U.S. 1085, 105 S.Ct. 1846, 85 L.Ed.2d 144 (1985). The use of a chemical agent is a reasonable alternative to a physical confrontation between an inmate and prison guards, for compelling compliance from an inmate who cannot be persuaded to obey an order. See Colon v. Schneider, 899 F.2d 660, 668-669 (7th Cir. 1990). Also, Jones v. Shields, 207 F.3d 491 (8th Cir. 2000).

In Albers v. Whitley, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986), the Supreme Court discussed the use of force during a prison disturbance, as follows:

> "Where a prison security measure is undertaken to resolve a disturbance...that indisputably poses significant risks to the safety of inmates and prison staff...the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on `whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'...`[S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted' are relevant to that ultimate determination. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur....But equally relevant are

6

> such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. When the `ever present potential for violent confrontation and conflagration'...ripens into actual unrest and conflict, the admonition that `a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators'...carries special weight. Prison administrators...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates....It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly,...courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives."

The Fifth Circuit has also held that the use of mace or tear gas by prison guards to quell a disturbance created by inmates is not the use of unreasonable force and does not constitute cruel and unusual punishment. See Clemmons v. Greggs, 509 F.2d 1338, 1340 (5th Cir. 1975), cert. den., 423 U.S. 946, 96 S.Ct. 360, 46 L.Ed.2d 280 (1975); LeBlanc v. Foti, 487 F.Supp. 272, 275 (E.D. La. 1980), and cases cited therein.

Miles alleges in his opposition to the motion for summary judgment that Jordan used excessive force when he sprayed Miles and Monroe with mace, and that the mace may have been a contributing factor to the collapse of one of Miles' lungs. However, the

7

incident reports and Jordan's affidavit, as well as affidavits by the other officers present at the incident (Doc. Item 28, Exs.), show that Miles and Monroe failed to comply with orders to stop fighting, so Jordan was ordered to spray them with bursts of mace; only when the mace was administered did Miles and Monroe separate. Apparently, Jordan's application of mace forced Monroe to stop stabbing Miles. Miles indicates in his complaint (which did not name Jordan as a defendant) that Jordan was unaware Miles had been stabbed; instead, Miles complained that Beaubouef failed to tell Jordan not to spray Miles because he was injured.

It is evident from Miles' complaint and defendants' submissions that Jordan administered the mace in order to stop the fight, thereby forcing Monroe to stop stabbing Miles. Miles' assertion that the mace *may have* contributed to one of his lungs collapsing is mere speculation; in fact, the mace forced Monroe to stop stabbing Miles, which *may have* saved Miles' life (Miles was stabbed approximately nine times in the back and abdomen, and had additional stab wounds in his arms, hands and head - Doc. Item 30, Exs.). Under the life-threatening circumstances presented in this case, the administration of two very short bursts of mace to halt the attack clearly was not excessive force.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted in favor of Officer Jordan.

8

Safety Issues, Lucas, CCA, and Warden Wilkinson

Next, Miles contends that Lucas, Warden Wilkinson, CCA, and the other defendants failed to provide adequate security at WCC by failing to conduct frequent and thorough shakedowns for weapons, failing to separate violent and aggressive inmates from the non-violent, non-aggressive inmates, and failing to prevent Monroe from attacking and stabbing him.

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). See also, Johnston v. Lucas, 786 F.2d 1254, 1259 (5th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met. First the deprivation alleged must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a §1983 liability to that prisoner. Farmer, 114 S.Ct. at 1976. A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

9

exists, and he must also draw the inference. An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. <u>Farmer</u>, 114 S.Ct. at 1979.

Therefore, to establish an Eighth Amendment "failure to protect" violation, the inmate must show that the prison official acted or failed to act despite his knowledge of a substantial risk of serious harm. <u>Farmer</u>, 114 S.Ct. at 1981. The question under the Eighth Amendment is whether a prison official exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or from multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in a situation face such a risk. <u>Farmer</u>, 114 S.Ct. at 1982. The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, <u>Farmer</u>, 114 S.Ct. at 1984, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite, <u>Farmer</u>, 114 S.Ct. at 1985 n. 10. On the other hand, prison officials may show that they were unaware even of an obvious risk to inmate health or safety, or that, although they actually knew of the risk, they believed

(albeit unsoundly) that the risk to which the facts gave rise was unsubstantial or non-existent, or that they responded reasonably to a substantial risk even if the harm ultimately was not averted. Farmer, 114 S.Ct. at 1982-83. Prison officials who act reasonably cannot be found liable under the cruel and unusual punishment clause. Farmer, 114 S.Ct. at 1983.

Miles has not alleged how frequently or infrequently shakedowns are conducted at WCC, nor has he alleged that Virgil Lucas was deliberately indifferent to Miles' safety. On the other hand, defendants show that Miles and Monroe were involved in an altercation earlier that day, which Miles failed to report to the prison officials. Defendants argue they had no way of knowing Monroe was likely to attack Miles. Miles admits in his brief (Doc. Item 30) that he failed to report the earlier altercation, but argues the defendants failed in their duty observe and supervise all daily activities of the inmates.

Common sense indicates it is impossible for prison officials to watch every inmate every minute of every day; that is why there are procedures for inmates who are threatened by other inmates to report the threat to the prison officials. Miles admits he did not report his earlier fight with Monroe, but now complains the prison officials were not aware that Monroe was likely to attack him. The problem is that Miles could have sought protection from the prison officials and put them on notice of the potential problem and


failed to do so. Therefore, Miles has not carried his burden of proving that Lucas (who was not even present at the incident) or any other defendant was deliberately indifferent to Miles' safety.

Miles also contends defendants failed to segregate the violent, aggressive inmates from the non-violent, passive inmates. State prison officials enjoy wide discretion in the operation of state penal institutions. Stewart v. Thigpen, 730 F.2d 1002, 1005 (5th Cir. 1984). In reviewing prison administrative actions in a Section 1983 complaint, the court must uphold the administrative decision unless it was "arbitrary and capricious". Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981), cert. den., 455 U.S. 992, 102 S.Ct. 1619 (1982). The classification of inmates is typically relegated to the broad discretion of prison officials and is a matter with which the courts are reluctant to interfere except in extreme circumstances. Mikeska v. Collins, 900 F.2d 833, 836 (5th Cir. 1990). A prisoner has no right to, and therefore no protected liberty interest in, a certain classification. Classification of inmates is an administrative function. Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989), and cases cited therein. Also, Mendoza v. Lynaugh, 989 F.2d 191, 194 n.4 (5th Cir. 1993).

First, it is noted that Miles has neither alleged nor shown that he is a non-aggressive, non-violent inmate, or that the inmate who stabbed him, Monroe, was previously known to be an aggressive, violent inmate. In fact, the evidence of record does not show who

started either the first fight or the second fight, or what the fights were about. Since Miles has not alleged or shown that his injuries were the result of defendants' failure to properly classify and segregate either himself or Monroe,[2] he has not shown his constitutional rights were violated by a deficient classification system at WCC.

Since Miles has not carried his burden of proving Lucas or any other defendant was deliberately indifferent to his safety or violated his constitutional rights in that respect, there are no genuine issues of material fact which would prelude a summary judgment. Therefore, defendants' motion for summary judgment should be granted on the issue of Miles' safety.

Medical Care, Dr. Pacheco, and Nurse Thomas

Miles next contends Dr. Pacheco and Nurse Thomas failed to provide prompt medical care after Miles was stabbed, and failed to provide adequate medical care following miles' return to WCC.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to

---

[2] An actual injury, caused by the constitutional violation alleged, is a constitutional prerequisite to Section 1983 claim. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180-518 U.S. 343, 353 (1996), discussing Bounds. The requirement that an inmate alleging a violation of his constitutional rights must show actual injury derives ultimately from the doctrine of standing. Lewis, 518 U.S. at 349, 116 S.Ct. at 2179. See also, Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

13

serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness" or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). An inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, nor does deliberate indifference not include a complaint that a physician has been negligent in diagnosing or treating a medical condition. Estelle, 97 S.Ct. at 291. Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Miles complains he was not transported to the hospital for about one and a half hours after he was stabbed, but does not allege or show any injury due to the delay. Defendants show, in affidavits by Dr. Pacheco and Pat Thomas (Doc. Item 28, pp. 2, 4-6), that Miles was immediately examined, given first aid, and

observed at WCC until he could be transported to the hospital; Miles complaints of pain on breathing were noted. The medical records show Miles arrived at the hospital in stable condition, though he continued to complain of pain on breathing (Doc. Item 28, pp. 7-10). At the hospital, a chest tube was placed in Miles due to air around his lungs ("pneumothorax") from a stab wound in the left lung (Doc. Item 28, pp. 13-14, 26-28; Doc. Item 30, p. 2 of 18), and he underwent exploratory laparotomy due to the abdominal stab wound (Doc. Item 28, pp. 15, 22-28); Miles' internal organs were not injured (Doc. Item 28, p. 15). Miles was discharged on January 1, 2006, prescribed a regular diet and no medications, and placed on light duty for four weeks with no heavy lifting (Doc. Item 30, pp. 1-3 of 18).

On January 2, 2006, the WCC infirmary noted that 5 of Miles' staples had come out but that his suture line was clear and dry (Doc. Item 30, Affidavits of Thomas and Pacheco). On January 3, 2006, Dr. Pacheco removed Miles' remaining staples and sutures and noted no sign of infection and that the suture line was intact (Doc. Item 30, Affidavits of Thomas and Pacheco). On February 1, 2006, Miles had a follow-up examination at the hospital; Miles was healed, Tylenol was prescribed for his complaints of mild pain, and no follow-up was ordered (Doc. Item 30, Affidavits of Thomas and Pacheco). On February 15, 2006, Miles was kept overnight in the prison infirmary for complaints of abdominal pain; the next day he

felt better and was released, and he was not seen again in the WCC infirmary prior to his transfer to another prison (Doc. Item 30, Affidavits of Thomas and Pacheco).

Miles has not shown that defendants were deliberately indifferent to his serious medical needs either before he went to the hospital or after he returned, that the delay in transporting him from WCC to the hospital was due to deliberate indifference to his serious medical needs, that the delay caused further injury, that he was not given prescribed medications (since none were prescribed), that Dr. Pacheco erred in removing Miles' staples and sutures when he did, or that Miles suffered any problems with his incision site.  The medical records simply do not support Miles' claims that he was denied medical care.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted on the medical care issues.

Understaffing, Wilkinson, and CCA

Finally, Miles contends Wilkinson and CCA are responsible for a policy of understaffing WCC, which results in increased violence between inmates.  Specifically, Miles contends there are two corrections officers assigned to monitor 352 inmates on eight tiers, and there are no electronic monitoring devices.  Miles claims he would have not been attacked, or the attack would have

16

been stopped sooner and he would not have been so seriously injured, had there been sufficient staff to monitor the inmates.

Knowledge of prison under-staffing and a decision not to increase the number of guards on duty may amount to deliberate indifference to the safety and well-being of the inmates, in violation of the Eighth Amendment. See Edwards v. Gilbert, 867 F.2d 1271 (11th Cir. 1989); Anderson v. City of Atlanta, 778 F.2d 678, 685 (11th Cir. 1985). Under-staffing of correctional officers increases the risk of inmate on inmate violence. To prevail, Miles must plead and prove there was a policy at the WCC, promulgated or implemented by Warden Wilkerson and/or CCA, of deliberate indifference to the risk of under-staffing and that this policy caused his injury. Greason v. Kemp, 891 F.2d 829, 838 (11th Cir. 1990); Westmoreland v. Brown, 883 F.Supp. 67, 76 (W.D.Va. 1995). Evidence of understaffing, without more, is not proof of official policy. Hood v. Itawamba, 819 F.Supp. 556, 566 (N.D. Miss. 1993); Gagne v. City of Galveston, 671 F.Supp. 1130, 1135 (S.D.Tex. 1987), aff'd, 851 F.2d 359 (5th Cir. 1988). Evidence of understaffing would become proof of an official policy only if more complete funding and staffing were possible and it was the deliberate intent of the policy-making official not to adequately fund and staff the jail. Gagne, 671 F.Supp. at 1135. When understaffing appears to have contributed to a violation of an inmate's Eighth Amendment rights, a causal link exists between that violation and the

rights, a causal link exists between that violation and the prison's policy if officials are aware of the staffing problem but fail to take corrective action. Greason, 891 F.2d at 837 n.18, and cases cited therein.

Defendants did not address this issue in their motion for summary judgment. Therefore, defendants' motion for summary judgment is denied as to Wilkinson and CCA on the issue of prison understaffing.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Miles' action against Beaubouef be DISMISSED WITHOUT PREJUDICE for failure to effect service.

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment be granted in favor of all defendants on all issues except the issue of understaffing, and that Miles' action be DISMISSED WITH PREJUDICE on all issues except the issue of understaffing.

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment be DENIED as to Wilkinson and CCA on the issue of understaffing and GRANTED as to all other defendants, and that Miles' action against all defendants except Wilkinson and CCA be DISMISSED WITH PREJUDICE on the issue of understaffing.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from

service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of November, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE