RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 8/2/13

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LEROY ANTHONY MILES,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. CV06-1079-A |
| VERSUS | |
| TIMOTHY WILKINSON, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Leroy Anthony Miles ("Miles") on June 26, 2006. The named defendants are Timothy Wilkinson ("Wilkinson")(warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Correctional Corporation of America ("CCA") (operator of the WCC), Virgil Lucas ("Lucas") (security chief at WCC), Pat Thomas ("Thomas") (a registered nurse employed at WCC), Dr. Pacheco (a medical doctor formerly employed at WCC), and Dustin Beaubouef ("Beaubouef") and K. Jordan ("Jordan") (correctional officers employed at WCC). Miles alleges that, while he was confined in the WCC on December 22, 2005, defendants failed to protect him from being stabbed by another inmate (Monroe) and provided inadequate medical care for his injuries. For relief, Miles asks for monetary damages. Miles is currently confined in the Allen Correctional Center in Kinder, Louisiana.

Defendants filed a motion for summary judgment (Doc. Item 28)

which was granted as to all defendants except CCA and Warden Wilkinson (Doc. 33). Defendants CCA and Wilkinson filed a second motion for summary judgment[1] (Doc. 90) with supporting documents, to which Miles has not responded. Defendants' second motion for summary judgment (Doc. 90) is now before the court for disposition.

Law and Analysis

The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

---

[1] Although defendants titled their motion a "motion to dismiss pursuant to Rule 12(b)(6) and alternatively motion for summary judgment," they do not make an argument in their brief for a motion to dismiss (Doc. 90). Moreover, defendants attached documentary evidence to their motion. In accordance with Fed.R.Civ.P. rule 12(b), since defendants' motion is accompanied by documentary evidence outside of the pleadings which the court will consider, the motion will be considered as a motion for summary judgment only.

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such

allegations are insufficient, therefore, to defeat a motion for summary judgment. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

<u>Law and Analysis</u>

<u>Failure to Protect</u>

Miles contends that Warden Wilkinson and CCA (as well as the other, previously dismissed defendants) failed to provide adequate security at WCC by failing to conduct frequent and thorough shakedowns for weapons, failing to separate violent and aggressive inmates from the non-violent, non-aggressive inmates, and failing to prevent inmate Monroe from attacking and stabbing him.

Miles named Warden Wilkinson as a defendant in this case, apparently in his capacity as a supervisor, since Miles has not made any specific factual allegations which involve Wilkinson. The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987). Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. <u>Mouille v. City of Live Oak, Tex.</u>, 977 F.2d 924, 929 (5th Cir. 1992), <u>cert.</u>

4

den., 508 U.S. 951, 113 S.Ct. 2443 (1993); Thompkins, 828 F.2d at 303. Of course, CCA (a corporate defendant) can only be involved in the case through its policies.

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1976 (1994). See also, Johnston v. Lucas, 786 F.2d 1254, 1259 (5th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met. First the deprivation alleged must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a §1983 liability to that prisoner. Farmer, 114 S.Ct. at 1976. A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. Farmer, 114 S.Ct. at

1979.

Therefore, to establish an Eighth Amendment "failure to protect" violation, the inmate must show that the prison official acted or failed to act despite his knowledge of a substantial risk of serious harm. <u>Farmer</u>, 114 S.Ct. at 1981. The question under the Eighth Amendment is whether a prison official exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or from multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in a situation face such a risk. <u>Farmer</u>, 114 S.Ct. at 1982. The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, <u>Farmer</u>, 114 S.Ct. at 1984, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite, <u>Farmer</u>, 114 S.Ct. at 1985 n. 10. On the other hand, prison officials may show that they were unaware even of an obvious risk to inmate health or safety, or that, although they actually knew of the risk, they believed (albeit unsoundly) that the risk to which the facts gave rise was unsubstantial or non-existent, or that they responded reasonably to a substantial risk even if the harm ultimately was not averted. <u>Farmer</u>, 114 S.Ct. at 1982-83. Prison officials who act reasonably

cannot be found liable under the cruel and unusual punishment clause. <u>Farmer</u>, 114 S.Ct. at 1983.

Miles has not alleged how frequently or infrequently shakedowns are conducted at WCC, nor has he alleged that Warden Wilkinson or CCA were deliberately indifferent to Miles' safety. On the other hand, defendants show, through an affidavit by Warden Wilkinson, that Miles and inmate Monroe were involved in an altercation earlier in the day on December 22, 2005, which Miles failed to report to the prison officials (Doc. 90-20, pp. 839-841). Defendants argue they had no way of knowing Monroe was likely to attack Miles. Miles admitted in his brief in response to defendants' first motion for summary judgment (Doc. Item 30) that he failed to report the earlier altercation to a prison official.

Common sense indicates it is impossible for prison officials to watch every inmate every minute of every day; that is why there are procedures for inmates who are threatened by other inmates to report the threat to prison officials. Miles admitted he did not report his earlier fight with Monroe, but now complains the prison officials were not aware that Monroe was likely to attack him. Miles could have sought protection from the prison officials and put them on notice of the potential problem, but failed to do so. Therefore, Miles has not carried his burden of proving that defendant were aware that Monroe was likely to attack Miles and were deliberately indifferent to Miles' safety. Miles also has not

7

alleged any unconstitutional policies promulgated by Warden Wilkinson or CCA that demonstrated deliberate indifference to Miles' safety.

Miles also contends defendants failed to segregate the violent, aggressive inmates from the non-violent, passive inmates. State prison officials enjoy wide discretion in the operation of state penal institutions. Stewart v. Thigpen, 730 F.2d 1002, 1005 (5th Cir. 1984). In reviewing prison administrative actions in a Section 1983 complaint, the court must uphold the administrative decision unless it was "arbitrary and capricious". Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981), cert. den., 455 U.S. 992, 102 S.Ct. 1619 (1982). The classification of inmates is typically relegated to the broad discretion of prison officials and is a matter with which the courts are reluctant to interfere except in extreme circumstances. Mikeska v. Collins, 900 F.2d 833, 836 (5th Cir. 1990). A prisoner has no right to, and therefore no protected liberty interest in, a certain classification. Classification of inmates is an administrative function. Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989), and cases cited therein. Also, Mendoza v. Lynaugh, 989 F.2d 191, 194 n.4 (5th Cir. 1993).

First, it is noted that Miles has neither alleged nor shown that he is a non-aggressive, non-violent inmate, or that the inmate who stabbed him, Monroe, was previously known to be an aggressive, violent inmate. In fact, the evidence of record does not show who

8

started either the first fight or the second fight, or what the fights were about. Since Miles has not alleged or shown that his injuries were the result of defendants' failure to properly classify and segregate either himself or Monroe,[2] he has not shown his constitutional rights were violated by a deficient classification system at WCC.

Since Miles has not alleged or offered any proof of any acts or omissions of Warden Wilkinson or any unconstitutional policies implemented by Warden Wilkinson or CCA which have deprived Miles of his constitutional rights, there are no genuine issues of material fact which preclude a summary judgment. Therefore, defendants' motion for summary judgment should be granted on the issue of Miles' safety.

Understaffing

Miles contends Wilkinson and CCA are responsible for a policy of understaffing WCC, which has resulted in increased violence between inmates. Specifically, Miles contends there are two corrections officers assigned to monitor 352 inmates on eight tiers, and there are no electronic monitoring devices. Miles

---

[2] An actual injury, caused by the constitutional violation alleged, is a constitutional prerequisite to Section 1983 claim. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180-518 U.S. 343, 353 (1996), discussing Bounds. The requirement that an inmate alleging a violation of his constitutional rights must show actual injury derives ultimately from the doctrine of standing. Lewis, 518 U.S. at 349, 116 S.Ct. at 2179. See also, Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

claims he would have not been attacked, or the attack would have been stopped more quickly and he would not have been so seriously injured, had there been sufficient staff to monitor the inmates.

Knowledge of prison under-staffing and a decision not to increase the number of guards on duty may amount to deliberate indifference to the safety and well-being of the inmates, in violation of the Eighth Amendment. See Edwards v. Gilbert, 867 F.2d 1271 (11th Cir. 1989); Anderson v. City of Atlanta, 778 F.2d 678, 685 (11th Cir. 1985). Understaffing of correctional officers increases the risk of inmate on inmate violence. To prevail, Miles must plead and prove there was a policy at the WCC, promulgated or implemented by Warden Wilkinson and/or CCA, of deliberate indifference to the risk of under-staffing and that this policy caused his injury. Greason v. Kemp, 891 F.2d 829, 838 (11th Cir. 1990); Westmoreland v. Brown, 883 F.Supp. 67, 76 (W.D.Va. 1995). Evidence of understaffing, without more, is not proof of official policy. Hood v. Itawamba, 819 F.Supp. 556, 566 (N.D. Miss. 1993); Gagne v. City of Galveston, 671 F.Supp. 1130, 1135 (S.D.Tex. 1987), aff'd, 851 F.2d 359 (5th Cir. 1988). Evidence of understaffing would become proof of an official policy only if more complete funding and staffing were possible and it was the deliberate intent of the policy-making official not to adequately fund and staff the jail. Gagne, 671 F.Supp. at 1135. When understaffing appears to have contributed to a violation of an inmate's Eighth Amendment

10

rights, a causal link exists between that violation and the prison's policy if officials are aware of the staffing problem but fail to take corrective action. <u>Greason</u>, 891 F.2d at 837 n.18, and cases cited therein.

Defendants show in their uncontested statement of undisputed facts (Doc. 90) and the affidavit by John Rees (Doc. 90), proffered as an expert in the field of corrections and prison operations, that the staffing for the Birch Unit in December 2005 is the same that was recommended by a court-appointed corrections expert in 1990 and approved by U.S. District Judge Polozola (Doc. 90-2). Warden Wilkinson states in his affidavit that WCC staffs each unit with an officer in the key area and two floor officers, and that WCC is designed and staffed the same as Allen Correctional Center and Avoyelles Correctional Center (Doc. 90-20, p. 840). Warden Wilkinson further shows there were three officers on duty in the Birch Unit on December 22, 2005 (Doc. 90-20, p. 840).

Defendants also show, through John Rees' affidavit, that the American Correctional Association ("ACA") manages and operates, on behalf of the Commission on Accreditation for Corrections, a process for developing standards for various types of facilities such as jails and prisons (Doc. 90-5, p. 23); the accreditation process is voluntary (Doc. 90-5, p. 24).[3] Rees stated that every

---

[3] Defendants also attached portions of ACA standards, accreditation reports, and staffing reports (Doc. 90).

prison facility in Louisiana (including WCC) is accredited, and that the ACA audits each facility every three years (Doc. 90-5, p. 24). Rees stated that WCC was audited in 2006, not long after Miles' was attacked in December 2005, and that the 2006 audit report states that overall numbers of significant incidents and healthcare outcome measures were "consistent with the overall mission and security level of the facility," and that the facility security "appeared to be very good for the custody level of the inmate population" (Doc. 90-5, pp. 26-27). Rees further stated that WCC is inspected at least annually by a group from the Louisiana Department of Corrections, which looks at the prison's total operations and staffing (Doc. 90-5, p. 27).

Defendants also show, in Rees' affidavit, that Miles would have been offered protective custody in a different housing unit had he informed the prison staff that he had been in a fight with inmate Monroe earlier in the day and was afraid of him (Doc. 90-5, p. 31). Rees further states that the staff at WCC responded professionally and appropriately to the incident once it was observed (Doc. 90-5, p. 31).

Rees stated in his affidavit that, under ACA guidelines, there are spatial requirements for housing offenders, as well as bathroom facility requirements, which limit the number of offenders which can be housed in a prison facility; however, there are no direct standards for the number of officers because the number of officers

necessary to staff a facility depends on the security level of the facility, the design of the facility, and the type of inmates housed in the facility (Doc. 90-5, pp. 33-34). Rees stated that, in his opinion, the staffing in place in the Birch Unit at WCC in December 2005, at the time of the attack on Miles, was appropriate for the design of the facility and the level of security (Doc. 90-5, p. 31).

Miles has not offered any evidence that Warden Wilkinson or CCA have a policy of understaffing WCC and has not refuted defendants' evidence that WCC was properly staffed in December 2005, when Miles was attacked by inmate Monroe.

Since there are no genuine issues of material fact which preclude a summary judgment, defendants' motion for summary judgment should be granted on the issue of prison understaffing.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 90) be GRANTED and that Miles' action against Warden Wilkinson and CCA be DISMISSED WITH PREJUDICE in its entirety.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) **days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within (14) **days** after being served with a

copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 2nd day of August ~~July~~ 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE